IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| DALE E. EKSTROM, | ) | |
| | ) | |
| Petitioner, | ) | Case No. CV  06-494-E-MHW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## <u>Introduction</u>

Currently pending before the Court for its consideration is Petitioner Dale E. Ekstrom's ("Petitioner") Petition for Review (Docket No. 1) of the Commissioner of the Social Security Administration's ("Commissioner") denial of social security benefits, filed December 11, 2006. The Court has reviewed the Petition for Review, the Answer, the parties' memorandums, and the administrative record ("AR"). For the reasons that follow, the Court will reverse and remand the Commissioner's decision.

## I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on April 5, 2004, alleging disability due to sciatica, chronic low back pain, herniated degenerative disc disease, and depression.  Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) G. Alejandro Martinez held a hearing on March 9, 2006, taking testimony from Petitioner, Michael F. Enright, Ph.D., and vocational expert John F. Hurst.  (AR 14-20).  ALJ Martinez issued a decision finding Petitioner not disabled on May 18, 2006.  (AR 12-20).

Petitioner filed a timely appeal to the Appeals Council, which denied his request for review making the ALJ's decision the final decision of the Commissioner.  (AR 10-11).  Petitioner appealed this final decision to this Court.  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 39 years old.  In addition to completing high school, Petitioner obtained an associate's degree in electronic systems technology.  His past relevant work includes work as an electronic technician, photo lab technician, and sound mechanic, as well as training and employment in the United States Air Force as a radar technician.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date.  At step two, it must be determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's

degenerative disc disease, depressive disorder, obesity, sleep apnea, and allergies were "severe" within the meaning of the Regulations.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairment or combination of impairments did not meet or equal the criteria for the listed impairments.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess Petitioner's residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found Petitioner was not able to perform his past relevant work as an electronic technician or sound mechanic.  Once a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.  The ALJ found at step five that Petitioner retained the residual functional capacity to perform sedentary work given his limitations, and that he would be able to perform occupations such as touch-up screener or semi-conductor bonder, both of which are unskilled sedentary jobs that exist in significant numbers in the national economy.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be

determined to be disabled only if his physical or mental impairments are of such severity that he

not only cannot do his previous work but is unable, considering his age, education, and work

experience, to engage in any other kind of substantial gainful work which exists in the national

economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security

Commissioner if the decision is supported by substantial evidence and is not the product of legal

error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v*

*Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount

of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist which supports the petitioner's

claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457

(9th Cir. 1995).   Thus, findings of the Commissioner as to any fact, if supported by substantial

evidence, shall be conclusive.  *Flaten,* 44 F.3d at 1457.  It is well-settled that if there is

substantial evidence to support the decision of the Commissioner, the decision must be upheld

even when the evidence can reasonably support either affirming or reversing the Commissioner's

decision, because the Court "may not substitute [its] judgment for that of the Commissioner."

*Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

**Memorandum Decision and Order - Page 4**

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

The Petitioner asserts four assignments of error. First, the Petitioner argues that the ALJ did not set forth clear and convincing reasons for finding that the Petitioner was not credible as to his pain testimony. A subpart of this argument is that without a proper credibility assessment of Petitioner's testimony as to his pain and other limitations, the hypothetical question posed to the vocational expert, which did not include any limitations on Petitioner's residual functional capacity based on his pain and other limitations, is of no evidentiary or legal value. The Petitioner also argues that the ALJ erred in failing to consider or analyze a prior determination by the United States Veteran's Administration that Petitioner was 100% disabled from all work activities.

The Petitioner's final merit based argument is that the ALJ did not assign the proper weight to the opinions of Petitioner's treating physicians. Since the Court has decided to reverse the decision of the Commissioner on the first two grounds, this assignment of error will not be discussed.

Finally, the Petitioner argues that this case should be reversed with a direction to award

benefits as opposed to remanding the case for further hearings before the Commissioner.  The
Court agrees that this should be the appropriate disposition.

**A.      ALJ's Evaluation of Petitioner's Credibility as it Relates to His Subjective
          Complaints of Pain.**

Petitioner argues that there was no explanation given for rejecting his complaints and
testimony about the pain he experienced.  The ALJ is responsible for determining credibility,
resolving conflicts in medical testimony, and for resolving ambiguities.  *Reddick v. Chater*, 157
F.3d 715, 722 (9th Cir. 1998).  The ALJ's findings must be supported by specific, cogent
reasons.  *Reddick*, 157 F.3d at 722.  If a claimant produces objective medical evidence of an
underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based
solely on lack of medical evidence.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See
also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a
claimant's subjective testimony on the basis that there is no objective medical evidence that
supports the testimony).  Unless there is affirmative evidence showing that the claimant is
malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony.
*Burch*, 400 F.3d at 680.  General findings are insufficient; the ALJ must identify what testimony
is not credible and what evidence undermines the claimant's complaints.  *Reddick*, 157 F.3d at
722.  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by
substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294,
1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility
evaluation, including considering claimant's reputation for truthfulness and inconsistencies in
claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities,

claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

The ALJ did not properly evaluate Petitioner's credibility. Instead, to justify his opinion that Petitioner was not credible, he stated that "[a]fter considering the evidence of record, . . . claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." In explaining this finding, the ALJ relied upon the objective medical evidence, stating that because Petitioner's physical symptoms in his lumbar spine were "benign," Petitioner could not have a "limitation that would prevent [him] from performing substantial gainful activity." (AR at 18). The ALJ completely failed to discuss Petitioner's activities of daily living, identify any inconsistency in the medical record with what Petitioner subjectively reported, examine Petitioner's work history, examine the side effects of medications prescribed to Petitioner, or review the medical histories reported by his treating physicians over the course of several years.

Yet, the record shows Petitioner sought continued and frequent medical care for his back pain over time. The injury to his low back occurred in 1991, after a slip and fall accident. (AR at 16, 72-79, 96-97). His first MRI scan on September 3, 1997, indicated he suffered degenerative disc disease at the L3-4, L4-5, and L5-S1, disc protrusion, and herniation. (AR

197).  Throughout 2001, Dr. Salzman treated Petitioner for continued complaints of low back pain and strain.  On December 3, 2001, Petitioner's x-rays showed mild loss of disc space at L4-5 and L5-S1, with mild degenerative changes.  (AR 115).  Dr. Choi performed an orthopaedic consult as a result of Petitioner's complaints, since he was not getting any relief.  On December 11, 2001, Dr. Choi reported that Petitioner had experienced an increase in low back pain, no radiating pain, no tenderness, and that the x-rays did show a narrowing of joint space at L4-5 along with arthritis.  (AR at 96-97).  Dr. Choi diagnosed low back pain secondary to arthritis and degeneration of disc space at L5-S1.  By this time, Petitioner's weight had become a complication of his low back pain, in turn causing more pain.

In 2002 and 2003, Petitioner again sought continued treatment from Dr. Salzman for increasing low back pain.  Petitioner had stopped working on January 4, 2003, because of his pain.  (AR 53-55).  The treatment notes from his visit on May 27, 2003, indicate he told Dr. Salzman that his pain was worse in the morning, that he felt best lying down, and the pain became worse with prolonged standing.  (AR 103-04).  On October 2, 2003, Petitioner reported that his pain had become worse in the last few months, and at this time his weight had crept up to 320 pounds, further exacerbating his pain.  (AR 101).

By 2004, Petitioner's pain had worsened further according to treatment notes.  On a visit on January 26, 2004, he reported severe back pain and numbness in his extremities.  (AR 158).  His second MRI, taken on July 12, 2004, showed mild disc bulging at L4-5, and an asymmetric left paracentral disc bulge at L5-S1.  (AR 155-56).  During a follow-up visit on August 2, 2004, despite such mild physical findings, Petitioner reported increased low back pain and radiating pain down his right leg.  (AR 151).  By October 27, 2004, x-rays showed mild arthritis in his

right hip, and he reported severe low back pain with radiating pain in his right leg, as well as pain in his right knee. (AR 139-140). His weight, which had remained at 320 pounds as a result of decreased activity due to his pain, was part of his problem. (AR 139). Petitioner's right knee had previously been weakened due to a severed patella tendon and dislocation, which had been repaired in 1981 by four surgeries. (AR 216). Because of his weight, his right knee was now compromised due to the previous injury.

Treatment notes from the VA hospital indicate a similar pattern of increasing self-reports of pain between 2003 and 2005, along with depression related to his pain. On July 16, 2003, Dr. Chen performed a psychiatric consultation, indicating that back pain was causing Petitioner to suffer from depression. (AR 212-218). In March 2005, Petitioner reported that his pain prevented him from sitting at a desk to help his wife with household tasks, and that he needed help showering and dressing. (AR 277). Petitioner's wife called his doctor on April 14, 2005, to request assistance with her husband because he was bent over, with his knees bent, and that he could not stand straight or walk. (AR 267). Petitioner's progress notes on May 13, 2005, indicate he reported that his "back went out" and he was bedridden for three weeks. (AR 254). Because of his pain, the VA approved him on December 6, 2005 for a motorized wheelchair and a lift to get into his car. (AR 297). He had already been using a cane to assist with walking. (AR 266, 309).

All of Petitioner's self-reports of pain are consistent with observations of his demeanor and pain behaviors observed by social security personnel who interviewed him. The field office report, completed on May 4, 2004, indicates that during a face-to-face interview, Petitioner was observed walking bent over, that he struggled to stand from a seated position, and had to stand

twice during the interview to relieve pain.  (AR 67-70).  During a psychiatric disability

determination performed by Dr. Casper, Ed.D. on July 19, 2004, Dr. Casper observed Petitioner

was having "difficulty in walking and appear[ed] to be in a lot of pain."  (AR 134).  Dr. Casper

also reported that Petitioner had to stand after sitting, that he shifted positions frequently, and

had difficulty getting out of a chair.  (AR 134-136).  His psychological functioning, according to

Dr. Casper, appeared related to his back pain.  (AR 138).

  The record fails to establish any inconsistent statements between Petitioner's testimony

and what he had previously told physicians.  At the hearing, Petitioner arrived in a motorized

wheelchair.  (AR 339).  He testified that he experienced pain on a daily basis, with flare-ups that

incapacitated him at least once each month.  (AR 347).  During flare-ups, he testified that he was

bedridden.  (AR 347).  At other times, he needed to recline throughout the day to relieve his

pain.  (AR 355).  He reported that his activities involved sedentary pursuits, such as listening to

music, reading, playing the keyboard and the guitar, and watching television.  (AR 134).

  The ALJ also failed to take into account Petitioner's treating physician's most recent

physical assessment.  Dr. Edgerly performed a physical exam on November 9, 2004, and

diagnosed chronic lower back pain, right hip pain, and right knee pain.  (AR 290-92).  His

findings indicated that Petitioner's weight exacerbated his back pain, and that osteoarthritic

changes in the right hip and knee were additional sources of pain.  Upon physical palpitation,

Petitioner's back pain increased with lumbar extension and facet loading, and he experienced

"pain with palpitation of his gluteus medius, TFL, IT band, and subtrochanteric bursa."  (AR

292).[1]

---

[1]  Petitioner also argued that the ALJ improperly ignored the opinions of his treating physicians.  A review
of the medical records indicates a consistent physical diagnosis of mild disc bulging and mild degenerative disc

As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  In this case, the ALJ committed error by rejecting Petitioner's subjective complaints of pain based solely on lack of objective medical evidence, which is improper.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).

The Court finds that, based on the above, the record lacks substantial evidence to support the ALJ's finding that Petitioner was not fully credible concerning the pain he experienced.

**B.      Residual Functional Capacity and Hypothetical Posed to Vocational Expert.**

Petitioner asserts that the ALJ's finding that he can perform sedentary work based upon the hypothetical posed to the vocational expert is in error.  The Petitioner contends that the hypothetical did not include all his limitations, specifically his alleged pain and problems with attendance at work when he is experiencing pain.

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, *i.e.*, whether the claimant has sufficient residual functional capacity to tolerate the demands of any

---

disease at L4-5 and L5-S1.  Rather, it is Petitioner's subjective complaints of pain that are at issue, since the diagnosis has not changed and has only become mildly worse over time in his low back with the addition of bursitis in his hip and arthritic changes in his knee.  (AR 292).  Because the Court finds error with the evaluation of Petitioner's credibility, the Court will not discuss this argument.

past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  A claimant's residual

functional capacity is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a).  An

ALJ considers all relevant evidence in the record when making this determination.  *Id.*

Generally, an ALJ may rely on vocational expert testimony.  20 C.F.R. § 404.1566(e); *Bayliss v.*

*Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  An ALJ must include all limitations supported

by substantial evidence in his hypothetical question to the vocational expert, but may exclude

unsupported limitations.  *Bayliss*, 427 F.3d at at 1217.

  The ALJ's residual functional capacity finding and the hypothetical he proposed to the

vocational expert are not supported by substantial evidence in the record.  Because the ALJ

improperly determined that Petitioner was not fully credible concerning his pain, he failed to

include those limitations in the hypothetical.  The hypothetical posed to Mr. Hurst, the

vocational expert, included Petitioner's impairments of low back disorder, mild depression,

allergies, obesity, and sleep apnea.  (AR 368).  But, because the ALJ disregarded Petitioner's

subjective pain symptoms and their effects, the ALJ posited that Petitioner could stand four of

eight hours, lift fifteen pounds occasionally, and ten pounds frequently, and had mild limitations

in concentration.  (AR 370).  As a result, the vocational expert indicated that Petitioner could

perform sedentary work.

  The ALJ's disregard of Petitioner's subjective complaints caused him to overlook other

important limitations on Petitioner's ability to work, such as problems with missing work, or his

ability to actually sit or stand for prolonged periods without taking a rest in a reclining position.

Also, the ALJ failed to consult a medical expert who could have provided objective insight

concerning the effects of Petitioner's pain.  As the Ninth Circuit has stated, the hypothetical

questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant supported by the record, including, for example, pain and an inability to lift certain weights.  If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the vocational expert's opinion has no evidentiary support.  *Emabrey v. Bowen,* 849 F.2d 418 (9th Cir. 1988).  Here, the Petitioner's testimony concerning his need to recline during the day and his flare-ups that caused him to be bedridden at least once per month were not included in the hypothetical relied upon by the ALJ.  When Petitioner's attorney took those limitations into account in an objective manner by asking if a person could perform sedentary work if he missed work three days each month because of common pain symptoms, the vocational expert opined that all jobs would be eliminated.  (AR 374-376).

The Ninth Circuit recently noted how the failure to include all of the limitations that are supported by substantial evidence in the record can undermine the efficacy of a hypothetical question:

> As the Commissioner correctly recognizes, in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence.  *See Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir.2001).  Conversely, an ALJ is not free to disregard properly supported limitations.  The ALJ's failure to account for the testimony of Robbins and his son calls into question the validity of his determination of Robbins's limitations and RFC before September 1998.  Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate.  *Id.*  Such a failure cannot be deemed harmless because, if the ignored testimony is credited, a proper hypothetical would have included limitations which, the record suggests, would have been determinative as to the vocational expert's recommendation to the ALJ.  Accordingly, the ALJ's step five determination is unsupported by substantial evidence.  *See id.* at 1163 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.).

*Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 886 (9th. Cir. 2006)

As in *Robbins*, the Commissioner's position regarding the propriety of the hypothetical question rests on the premise that Petitioner's testimony regarding his disabling pain was not credible.  However, the ALJ never followed the proper legal standards for rejecting Petitioner's pain testimony.  As such, the hypothetical question, which was to include all of Petitioner's limitation that were supported by substantial evidence, is an evidentiary and legal nullity.

**C.      Disability Determination by the Department of Veterans Affairs**.

In his progress notes on September 13, 2004, there is a note that Petitioner is "on VA CS with 100% unemployability for 1 yrs."  (AR 144-145).[2]  Petitioner asserts that the ALJ failed to explain how a person who is receiving disability from the military is able to perform "substantial gainful activity."

An ALJ must typically give great weight to a VA determination of disability.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  But, the VA determination is not binding on the SSA because the VA and SSA criteria for determining disability are not identical.  *McCartey*, 298 F.3d at 1076.  *See also* 20 C.F.R. § 404.1504.  If he gives persuasive, specific, valid reasons for doing so that are supported by the record, the ALJ may give less weight to the VA determination.  *McCartey*, 298 F.3d at 1076.  In *McCartey v. Massanari*, the petitioner had been found to be 80% disabled by the VA and the ALJ failed to consider, or even mention, that finding in his opinion.  *Id.*  The Ninth Circuit reversed and remanded.  *Id.*

---

[2]  Elsewhere in the record, however, it indicates that Petitioner is receiving a 60% service connection disability from the VA for spinal disc condition.  (AR 216).  No explanation was given for the discrepancy, although the passage of time could be an explanation since this progress note is dated July 16, 2003, more than a year prior to the September 13, 2004 progress note. (AR 216-218).  The actual VA determination and any documents or examinations supporting the determination are not part of the record.

The ALJ failed to discuss the VA's determination that Petitioner had a 100% service-connected disability secondary to chronic low back pain despite evidence of such a determination in the record.  (AR 339, 14-20).  By failing to consider the VA finding and mention it in his opinion, the ALJ committed error.

**D.     Award of Benefits.**

Petitioner argues that a reversal and remand with an order for immediate payment of benefits is appropriate in this case.  The Court has discretion to remand a case either for additional evidence and findings, or for an award of benefits.  *McCartey v. Massanari*, 298 F.3d at 1076.  An award of benefits may be directed if "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *Id.*  Circumstances arise to award benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076–77.

In this case the record is fully developed.  No discrepancies are evident concerning Petitioner's subjective complaints of pain, his increasing reports of pain over time, or their debilitating effects.  The hypothetical posed to the vocational expert by Petitioner's attorney took into account his physical pain limitations, and with the added limitation the vocational expert determined there would be no jobs Petitioner could perform.  The VA has considered him to be 100% unemployable.  Therefore, it would be appropriate to reverse and remand to the Commissioner with instructions for payment of benefits.

**Memorandum Decision and Order - Page 15**

**V.**
**Conclusion**

Based on its review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be reversed and remanded with the direction to award benefits. Further proceedings are not necessary other than a remand to determine benefits.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2) This action shall be REMANDED to the Commissioner with instructions to remand to the ALJ for an award of benefits.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: February 13, 2008

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge

**Memorandum Decision and Order - Page 16**